**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

SARAH McDOUGALD,

        **Plaintiff,**

v.                                                                              **Civil Action No: 4:04cv91**

HOMECOMINGS FINANCIAL NETWORK, INC.

        **Defendant,  &**

TONY T. McDOUGALD,

        **Defendant.**

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment and

Plaintiff's motion to amend the complaint.  The Court **GRANTS** Defendant's motion and **DENIES**

Plaintiff's motion as explained below.

**PROCEDURAL HISTORY**

Plaintiff filed a complaint under the Real Estate Settlement Procedure Act, 12 U.S.C. §

2601 on June 28, 2004, Doc. 1.   On July 23, 2004, Defendant filed a motion to extend time to

file responsive pleadings.   The Court **GRANTED** the motion on July 23, 2004, extending the

answer deadline to August 12, 2004, Doc. 4.

Defendant filed a motion to dismiss on August 12, 2004, Doc. 6.  Counsel submitted an

agreed Stipulation and Order stating that Defendant's motion to dismiss is moot and withdrawn,

and that Defendant shall file an answer within twenty (20) days of entry of Stipulation and Order.

See FED R. CIV. P 16(b) Scheduling Order, Doc. 10.  The Stipulation and Order was entered on

September 21, 2004, giving the Defendants until October 11, 2004 to file an answer.  On

September 17, 2004, Defendant filed a motion seeking to join Plaintiff's spouse at the time of the

purchase of the property in question, see Complaint ¶ 5, Doc. 1.  See also Motion, Doc. 11.

The Court **GRANTED** the motion on December 21, 2004.  See Order, Doc. 14.  Pursuant

to the Court's order, Plaintiff filed an amended complaint on January 10, 2005 naming both,

Homecomings and Tony T. McDougald as Defendants,  Doc. 15, which Defendant

Homecomings  answered on January 28, 2005.[1]  Defendant Homecomings filed a motion for

summary judgment on April 18, 2005, Doc. 28, to which Plaintiff was late in responding on May

13, 2005, Doc. 32.[2]  Plaintiff also filed a motion for voluntary dismissal under FED RULE CIV. P.

41(a)(2) or, in the alternative, to amend the complaint on May 13, 2005, Doc. 33, to which

Defendant Homecomings responded on May 24, 2005, Doc. 37, and Plaintiff replied on June 3,

2005, Doc. 39.   The Court **DENIED** Plaintiff's motion for voluntary dismissal in an Order entered

July 13, 2005, Doc. 42.

FACTUAL BACKGROUND[3]

In January 1999, Plaintiff Sarah McDougald and her then-husband Tony McDougald[4]

purchased a home, located at 2 Shaughanassee Court Hampton, Virginia ("Property").  See Sarah

McDougald Aff. ¶ 2 attached to Plaintiff's response to Defendant's motion for summary

---

[1]Default was entered against Tony McDougald March 23, 2005; Plaintiff filed a motion for default judgment against him on April 21, 2005, Doc. 21.

[2]Defendant Homecomings replied on May 24, 2005, Doc. 38.

[3]The facts are stated in the light most favorable to Plaintiff and are not factual findings for any other purpose other than a ruling upon the instant motions.

[4]Also a Defendant in this case.

judgment, Doc. 32; <u>see</u> <u>also</u> the Deed dated January 14, 1999, Ex. 1 to Defendant Homecoming's

memorandum.  In order to finance the purchase, Plaintiff and her husband accepted a loan in the

principal amount of $151,200 from BNC Mortgage, Inc. ("BNC") on January 15, 1999.  <u>See</u>

McDougald Aff. at ¶ 3.  The loan was memorialized by the following documents: the Adjustable

Rate Note dated January 15, 1999, and the Deed of Trust with the attached Adjustable Rate Rider

both dated January 15, 1999.  <u>See</u> Exs. 2, 3 to Defendant Homecomings Memorandum.  The

Note provides for twenty-four (24) principal and interest payments of $1,332.48 each between

March 1999 and February 2001 (for a total of $31,979.52) and for three hundred thirty-six (336)

monthly payments with interest rates adjustable every six (6) months.[5]  <u>See</u> McDougald Aff. ¶ 4.

On or about February 1, 1999, BNC assigned the loan to Defendant Homecomings.  <u>See</u> Donna

Arrington Affidavit ¶ 4, Doc. 27.

The McDougalds missed their first monthly payment due March 1, 1999 and did not

make that payment until June 8, 1999.  <u>See</u> Arrington Aff. ¶ 5.  The McDougalds continued

making their monthly payments late or not at all until June 2, 2000.  <u>See</u> Arrington Aff. ¶ 6.  On

June 2, 2000, Plaintiff filed a Chapter 13 petition for bankruptcy.  <u>Id.</u>  On April 23, 2001, the

Bankruptcy Court approved a plan which provided for both arrears and regular monthly

payments to Homecomings.  <u>See</u> Arrington Aff. ¶ 7,8.  The McDougalds failed to make the

required payments to Homecomings.  <u>See</u> Arrington Aff. ¶ 9.  On July 13, 2001, Homecomings

moved for relief from the automatic stay.  <u>See</u> Arrington Aff. ¶ 10.  On August 31, 2001, the

Bankruptcy Court entered a consent order stating that McDougald was in post-petition arrears

---

[5]Payments for the period March 2001 through August 2001 were $1,554.88 each month, for a total of $9,329.28;  for the period of September 2001 through August 2002, payments due were $1,443.20 each month for a total of $17,318.40.  <u>See</u> McDougald Aff. ¶ 6.

$11,907.44 for the months of February 2001 through August 2001; accordingly, McDougald's

total post-petition debt as stated in the consent order was $12,532.44 after adding $625 in

attorney's fees and court costs.   The consent order specified that McDougald would pay $5000

in one lump sum on or before August 17, 2001 and the remaining $7,532.44 over a period of six

months ($1,256.00 per month) in addition to her regular monthly payments.  See Ex. 4.  On

November 30, 2001, Defendant Homecomings filed a notice of default in Bankruptcy Court,

alleging that McDougald had not made either the regular or the arrears payments for September,

October, or November, 2001.  See Ex. D to Plaintiff's Response.  In January 2002, Defendant

Homecomings contacted McDougald and informed her that it would begin foreclosure

proceedings.  See McDougald Aff. ¶ 13.  Defendant Homecomings sent a new payment schedule

and a letter on January 23, 2002, stating that McDougald was in arrears $32,733.77.  See Ex. 5.

Plaintiff maintains that as of that date she was only in arrears $14,748.44 (including the

$7,532.44 amount listed in bankruptcy court order addressing post-petition arrearage and also

$7,216.00 from five regular payments of $1,443.20 missed from September, 2001 through

January, 2002).  See McDougald Aff. ¶ 12.

On January 25, 2003, McDougald and her husband signed and returned the Repayment

Agreement.[6]  See Ex 5.  Pursuant to this schedule, McDougald made a $20,000 payment around

---

[6] Although McDougald recognized that the new schedule would have her paying more than she thought she
owed up to that point, she believed that the excess would be applied to the principal as prepayments.  She now
asserts that because Homecomings did not apply the excess to the principal, Homecomings increased the total
amount due through the new schedule.

      However, the new payment schedule likely did not change the total amount due, but simply reflected the
amount that Defendant Homecomings thought Plaintiff owed in arrears as of that date, $32,733.77.  Therefore, the
discrepancy emanates not from an increase in the total amount due but from the parties' disagreement over what
Plaintiff owed in arrears as of the date of the new schedule with Defendant claiming $32,733.77 and Plaintiff
claiming $14,748.44.  For purposes of this Order, the Court will assume that Plaintiff was in arrears $14,748.44 as of
January 23, 2002.

January 28, 2002.  See McDougald Aff. ¶ 14.  McDougald also made the February, 2002

through May, 2002 payments of $2,340.41.  Id.; see also Ex. B to Plaintiff's response.  Each

payment was due on the 28th of that month.  See Repayment Agreement, Ex. 5 to Defendant's

memorandum.  Late payments are grounds for foreclosure without notice or demand under the

Repayment Agreement.  Id.  The March, April, and May, 2002[7] payments were late.  See

Arrington Aff. ¶ 19; see also Ex. B to Plaintiff's response.  Homecomings began foreclosure

proceedings when the May 28, 2002 payment was not received on time.  See Arrington Aff. ¶ 19.

On Juy16, 2002, Homecomings appointed Winfrey T. Wade, P.L.C., as a substitute trustee for

the Property under the terms of the Deed of Trust.  Id. at  ¶  21.  The Trustee instituted

foreclosure proceedings and on August 29, 2002 sold the Property at public auction to Bank One.

N.A. for $151,000.00.  Id. at  ¶  22; see McDougald Aff. ¶ 16.   No monies from the sale of the

home were ever delivered to the Plaintiff.  See McDougald Aff. ¶ 17.  Plaintiff asserts that she

was entitled to some of the proceeds because she had made payments on the principal and the

sale price was equal to the original principal on the note.  Id. at ¶¶ 7, 16.  She states that the total

amount due from the inception of the loan to the foreclosure date (January 1999 to August 2002)

was $58,627.20 and that she paid a total of $74,414.88 over that same time period.  Id.


## MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standard

District courts may enter summary judgment only when there is no genuine issue of

material fact and the movant is entitled to judgment as a matter of law.  Miller v. Leathers, 913

---

[7] The May 2002 payment was returned to McDougald.  See Arrington Aff. ¶ 20.

F.2d 1085, 1087 (4th Cir. 1990) (en banc) *cert. denied*, 498 U.S. 1109 (1991).  The facts and

inferences to be drawn from the pleadings must be viewed in the light most favorable to the

nonmoving party.  Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).  Summary judgment

is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for

the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).

In order to defeat a motion for summary judgment, a plaintiff cannot rely on "mere belief

or conjecture, or the allegations and denials contained in his pleadings." Doyle v. Sentry Insur.,

877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986)).  Rather, the nonmoving party must set forth specific facts through affidavits,

depositions, interrogatories, or other evidence to show genuine issues for trial.  Celotex, 477 U.S.

at 324.  When a plaintiff fails to make a sufficient showing establishing an essential element of

his case and the plaintiff bears the burden of proof on that issue, "there is 'no genuine issue of

material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." Chelates, 477 U.S. at

322; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

While "it is the province of the jury to resolve conflicting inferences from circumstantial

evidence, ... it is the duty of the court to withdraw the case from the jury when the necessary

inference is so tenuous that it rests upon speculation and conjecture." Ford Motor Co. v.

McDavid, 259 F.2d 261 (4th Cir. 1958).  Such an approach protects against the danger that a jury

will make a decision based on sheer speculation, tainted by impermissible factors such as jury

sympathy. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

## I.  Count One: Violation of the Real Estate Sales Practices Act

Plaintiff admits that this claim should be dismissed as she can not prove that she sent a qualified written request to Defendant Homecomings pursuant to 12 U.S.C. § 2605(e)(1)(A),(B). See Plaintiff's memorandum in opposition to the Defendant's motion for summary judgment.

Accordingly, the Court **DISMISSES** this claim.

## II. Count Two: Conversion

Plaintiff alleges that Defendant Homecomings converted the proceeds of the sale.

Plaintiff asserts that she paid approximately $74,414.88 on the note between January 1999 and August 2002 although only $58,627.20 in payments was due during that same period. See McDougald Aff. ¶¶ 6,7.  Accordingly, she asserts that more than $15,000[8] of her payments should have been applied as prepayment on the principal, see id. at ¶ 7;[9] therefore, when the house sold for $151,000[10] (the amount of the mortgage), she should have received the difference between the sale price and the principal balance on the note,  see id. at ¶¶ 16, 17.

Viewing the evidence in the light most favorable to the Plaintiff, Plaintiff has made a prima facie case that she is entitled to some of the proceeds of the sale; however, the Court must now determine whether Plaintiff can bring a claim of conversion as a matter of law.

---

[8] She also asserts that "if Homecomings had applied my payments, I owed a balance on my note of less than $130,000.00."  McDougald Aff. ¶ 19.

[9] The Note authorizes prepayments of principal.  See Note ¶ 5, Ex. 5 to Defendant's memorandum.

[10] Plaintiff states in her opposition to the motion for summary judgement that the sale price was $166,594.40, see Doc. 32; however, the Court will use the $151,000 figure in her affidavit for purposes of this motion as Plaintiff's statements in her response are not evidence.

**In committing the alleged conversion, did Defendant breach a duty to Plaintiff other than Defendant's duty to perform under the contract?**

Defendant argues that Homecomings owed no duty to McDougald other than the duty to perform under the Note, the Deed of Trust, and the Repayment Agreement.

"In determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 558 (Va. 1998).

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

Id. (holding that the plaintiff could not maintain an action for fraud against a builder because the builder did not complete the job as specified under the contract).

The Deed of Trust entered into by the parties governs the sale of Plaintiff's Property through foreclosure. The Deed of Trust states:

> Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including but not limited to, Trustee's fees of 5.000% of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it.

Deed of Trust ¶ 21, Ex. 3 to Defendant's Memorandum.

Thus, Plaintiff's claim that the Trustee or Homecomings did not return the alleged excess of the sale is a claim that Defendant (or its agent) did not perform as it was obligated under the Deed of Trust. Accordingly, Plaintiff's claim of conversion is **DISMISSED**.

### III. Count three: Fraud and Misrepresentation

Plaintiff alleges that "Defendant made multiple statements to the Plaintiff that misrepresented the status of her loan and the amount of money past due and owing by the Plaintiff to the Defendant." Homecomings sent a letter dated January 23, 2002 to the McDougalds indicating that they were in default and owed $32,733.77. See Ex. 5 to Defendant's memorandum. Plaintiff states that she was only $14,748.44 in arrears as of the date of the letter. See McDougald Aff. ¶12. Thus, there is a genuine dispute as to a fact material to Plaintiff's fraud claim. Viewing the evidence in the light most favorable to Plaintiff, Defendant made a false statement when it claimed that Plaintiff owed $32,733.77 as of January 23, 2002. Plaintiff, however, can not maintain a fraud action based on this statement because she did not file suit within two years from the time the fraud was discovered or reasonably should have been discovered.

Under Virginia law, an action for fraud must be brought within two years[11] from the time the fraud "is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code Ann. § 8.01-249.

Defendant made this statement in a letter dated January 23, 2002; Plaintiff received it no later than January 25, 2002 as evidenced by her signature on the Repayment Agreement that was attached to the letter. See Ex. 5, 6 to Defendant's memorandum. Plaintiff should have known that the statement was false. Plaintiff's contention that the $32,733.77 figure was a misrepresentation is based on information known to her at the time she received Homecoming's

---

[11] "[E]very action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code Ann. § 8.01-243(A).

letter. Specifically, Plaintiff asserts that she was only in arrears $14,748.44, including $7,216.00

which came from five missed payments from August 2001 to January 2002 and $7,532.44

pursuant to the bankruptcy court order dated August 31, 2001. Plaintiff would surely have

known in January 2002 the amount of the payments that she did not make from August 2001 to

January 2002. Further, as Plaintiff had been served with the August 31, 2001 bankruptcy court

order, she would have known in January 2002 that she still owed also $7,532.44 in post-petition

arrears.

Whether she ultimately owed $14,748.44 or $32,733.77 at that time would be a question

for the jury, but Plaintiff had the same information then, on which she bases her fraud claim now.

As Plaintiff filed her claim June 28, 2004 more than two years from the date that the fraud was

discovered or by the exercise of due diligence reasonably should have been discovered, her fraud

claim is barred by the statute of limitations and is **DISMISSED**.[12]

MOTION TO AMEND THE COMPLAINT

"Leave [to amend] shall be freely given when justice so requires." FED. R. CIV. P 15(a).

However, leave should not be given when there has been "undue delay, bad faith, or dilatory

motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc...". Healthsouth Rehab. Hosp. v. Am.

Nat'l Red Cross ("Healthsouth"), 101 F.3d 1005, 1010 (4th Cir. 1996), quoting Foman v. Davis,

371 U.S. 178, 182 (1962). See also Healthsouth, citing Deasy v. Hill 833 F.2d 38, 40 (4th Cir.

---

[12]Plaintiff also argues that statements made during the foreclosure process (approximately May 28, 2002 to August 29, 2002) by Defendant's designated Trustee were false and should be imputed to Defendant. Although a claim based on any such statement may not be barred by the statute of limitations, Defendant proceeded with the foreclosure pursuant to the Repayment Agreement signed by Plaintiff on January 25, 2002. Thus, any statement made by Defendant or the Trustee during foreclosure concerning the arrearage or status of the loan was made pursuant to the Repayment Agreement and would not be false.

1987) (delay by itself is not enough to deny leave, but is enough when combined with prejudice to the defendant).

Plaintiff seeks to add a third state law claim of unlawful foreclosure.   Plaintiff filed her motion seeking to amend on May 13, 2005, almost a month after Defendant Homecomings had filed its motion for summary judgment on April 18, 2005.  In addition to Plaintiff's delay in seeking to amend, it would be futile to allow her to amend.  The Repayment Agreement signed by Plaintiff on January 25, 2005 states that the Defendant may foreclose without further notice and demand, if any of the referenced payments are late.  See Ex. 5 to Defendant's motion for summary judgment.  Plaintiff has proffered Western Union receipts, which show that her March, April and May 2002 payments were late.  See Ex. B to Plaintiff's response.  Therefore, Plaintiff herself has shown that she was in default and subject to foreclosure.

Accordingly, the Court **DENIES** Plaintiff's Motion to Amend the Complaint

### CONCLUSION

The Court **DISMISSES** all three of Plaintiff's claims and **GRANTS** Defendant's motion for summary judgment.  Further, the Court **DENIES** Plaintiff's motion to amend the complaint

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 16, 2005